In the Matter of the Commitment of C.J., Appellant–Respondent,

v.

THE HEALTH AND HOSPITAL CORP. OF MARION COUNTY, d/b/a Midtown Community Mental Health Center, Appellee–Petitioner.

No. 49A02–0506–CV–536.

Court of Appeals of Indiana.

Feb. 13, 2006.

---

Ruth Johnson, Marion County Public Defender, Indianapolis, for Appellant.

Eric J. Essley, Midtown Community Health Center, Indianapolis, for Appellee.

## OPINION

MATHIAS, Judge.

C.J. appeals from the Marion Superior Court's order involuntarily committing him to a mental health facility. He raises one issue: whether sufficient evidence supported the involuntary commitment order. We affirm.[1]

### Facts and Procedural History

On May 10, 2005, C.J. was admitted to Wishard Health Services as a result of an emergency detention arising from a dispute between C.J. and members of his family. C.J. was diagnosed with substance-induced psychosis and poly-substance dependence and was admitted to the Midtown Community Mental Health Center ("Midtown"). Midtown then filed a petition for C.J.'s involuntary commitment, alleging that C.J. suffered from a psychiat-

---

1. It is entirely possible that C.J. has now been discharged from the mental health facility, in which case this matter would be moot. While we generally dismiss cases that are deemed moot, such cases may be decided on their merits where they involve questions of great public interest that are likely to recur. *See Golub v. Giles*, 814 N.E.2d 1034 (Ind.Ct.App. 2004), *trans. denied.* An estimated 22.1 percent of Americans ages 18 and older—roughly 1 in 5 adults—suffer from a diagnosable mental disorder in a given year. *See* National Institute of Mental Health website available at *http://www.nimh.nih.gov/healthinformation/statisticsmenu.cfm* (last visited January 30, 2006). The question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society. *Golub*, 814 N.E.2d at 1034. Therefore, we will address it.

ric disorder and that he presented a danger to himself or others. Appellant's App. p. 14. The trial court conducted a commitment hearing on May 18, 2005. Dr. Christopher Haas ("Dr. Haas"), the resident assigned to care for C.J., testified at the hearing that C.J. had experienced paranoid delusions that his family was stealing from him and auditory hallucinations telling him that his family was trying to kill him. Tr. p. 6. Dr. Haas also testified that C.J. had delusions that he was a prophet. *Id.* C.J. had also threatened to kill himself and his family, and while on the unit, he threatened staff members and hit another patient. Tr. p. 7. Dr. Haas further testified that he suspected C.J. could have schizophrenia or bi-polar disorder, but that C.J. needed to be substance-free for four weeks before a diagnosis could be confirmed. Tr. pp. 5, 10.

C.J. also testified at the commitment hearing. He informed the court that he lived with his aunt in a house given to him by his grandmother, and that he worked with a friend washing cars. Tr. p. 13. C.J. testified that he shopped for and cooked his own food and did his own laundry. Tr. p. 14. He acknowledged that he had struck another patient, but explained that the patient had "told me as a man to perform oral sex on him...[t]hose are fighting words anywhere you go." Tr. pp. 16–17.

At the conclusion of the hearing, the trial court found that C.J. suffered from substance-induced psychosis and poly-substance dependence, a mental illness as defined by Indiana Code section 12–7–2–130. The trial court further found that C.J. posed a danger to others and was gravely disabled, as those terms are defined by statute. As a result, the court issued an order of regular commitment.[2] C.J. now appeals.

## Standard of Review

■ In Indiana, a person may be involuntarily committed if the petitioner proves by clear and convincing evidence that the individual is mentally ill and either dangerous or gravely disabled and that commitment is appropriate. Ind.Code § 12–26–2–5(e)(1) (2001). Civil commitment is a significant deprivation of liberty that requires due process protections. *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Upon review of an order for involuntary commitment, we will consider only the evidence favorable to the judgment and all reasonable inferences therefrom. *M.Z. v. Clarian Health Partners,* 829 N.E.2d 634, 637 (Ind. Ct.App.2005), *trans. denied.* If the trial court's commitment order represents a conclusion that a reasonable person could have drawn, the order must be affirmed, even if other reasonable conclusions are possible. *In re Commitment of Heald,* 785 N.E.2d 605, 613 (Ind.Ct.App.2003), *trans. denied.*

## Discussion and Decision

■ C.J. first challenges the trial court's finding that he suffers from a mental illness. "Mental illness" is defined as "a psychiatric disorder that [ ] substantially disturbs an individual's thinking, feeling, or behavior; and [ ] impairs the individual's ability to function. The term includes mental retardation, alcoholism, and addiction to narcotics or dangerous drugs." Ind.Code § 12–2–7–130(1) (2001). At the commitment hearing, Dr. Haas testified that, based upon his examination of C.J. and review of his medical record, C.J. suf-

---

2. An involuntary commitment for a period to exceed ninety days is a "regular" commitment. *See* Ind.Code ch. 12–26–7. In contrast, an involuntary commitment for a period of less than ninety days is a "temporary" commitment. *See* Ind.Code ch. 12–26–6.

fers from substance-induced psychosis and poly-substance dependence. Tr. p. 6. He further testified that C.J. experienced grandiose and paranoid delusions, as well as disorganized thought processes and behavior, which Dr. Haas attributed to C.J.'s mental condition. Tr. pp. 6–7. In addition, we note that Dr. Haas testified that he suspected C.J. also suffered from schizophrenia, but could not confirm that diagnosis because "the substances have to out of the system for four [ ] weeks before you can confirm." Tr. p. 10. From this evidence, the trial court could reasonably conclude that C.J. was mentally ill for the purposes of Indiana Code section 12–26–2–5(e).

Next, C.J. contends that Midtown failed to present clear and convincing evidence that he is dangerous or gravely disabled. In order to carry its burden of proof, Midtown had to prove that C.J. was dangerous *or* gravely disabled, but did not have to prove both elements. *See M.Z.,* 829 N.E.2d at 637.

Indiana Code section 12–7–2–53 defines "dangerous" as "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." Ind.Code § 12–7–2–53 (2001). " 'Dangerousness must be shown by clear and convincing evidence indicating that the behavior used as an index of a person's dangerousness would not occur but for the person's mental illness.' " *Commitment of M.M. v. Clarian Health Partners,* 826 N.E.2d 90, 97 (Ind.Ct.App.2005), *trans. denied* (quoting *Commitment of C.A. v. Center for Mental Health,* 776 N.E.2d 1216, 1218 (Ind.Ct.App.2002)). Importantly, a trial court is not required to wait until harm has nearly or actually occurred before determining that an individual poses a substantial risk of harm to others. *See M.Z.,* 829 N.E.2d at 638 (citing *Matter of Commitment of Gerke,* 696 N.E.2d 416, 421 (Ind.Ct.App.1998) (holding that a commitment premised upon a trial court's prediction of dangerous future behavior, without prior evidence of the predicted conduct, was valid, and observing "[t]he old adage of 'the dog gets one bite' " does not, and should not, apply in the context of commitment proceedings, despite the severe restrictions on liberty imposed by commitment to a mental facility)).

Here, the trial court was presented with testimony that C.J. had threatened to kill himself and his family at the time of his admission, which Dr. Haas attributed to his substance-induced psychosis. Tr. p. 7. Evidence was also presented that he threatened staff members, and actually struck another patient on the unit. *Id.* Based upon this evidence, a reasonable person could conclude that C.J. posed a substantial risk of harm to others. Thus, sufficient evidence was presented to support the trial court's conclusion that C.J. was dangerous to others.[3]

### Conclusion

Sufficient evidence supports the trial court's conclusion that C.J. was mentally ill and dangerous to others at the time of his involuntary commitment. Therefore, we affirm the trial court's order involuntarily committing C.J. to a mental health facility.

Affirmed.

ROBB, J., and VAIDIK, J., concur.

---

**3.** Because we conclude that sufficient evidence was presented to prove that C.J. was dangerous to others, we need not consider C.J.'s argument that insufficient evidence sup-

ported the trial court's conclusion that he was gravely disabled. *See M.Z.,* 829 N.E.2d at 640 n. 1.