# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**KARA A. HANCUFF**
Monroe County Public Defender
Bloomington, Indiana

ATTORNEY FOR APPELLEE:

**JAMES L. WHITLATCH**
**KATHRYN DeWEESE**
Bunger & Robertson
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE MENTAL HEALTH PROCEEDINGS OF B.M. | ) ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 53A04-1405-MH-210 |
| INDIANA UNIVERSITY HEALTH, HOSPITAL | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Stephen R. Galvin, Judge
Cause No. 53C07-1403-MH-103

**January 7, 2015**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

B.M. appeals the Monroe Circuit Court's order involuntarily committing him to a mental health facility. Specifically, B.M. argues that Indiana University Health ('the Hospital") did not present sufficient evidence to support his involuntary commitment.

We affirm.

**Facts and Procedural History**

On March 28, 2014, B.M. placed a 911 call from the Ellettsville Library to the police because he was worried that people were obtaining his personal information through a social network. The police transported B.M. to the Hospital where he was examined by an emergency room physician and a social worker. Both the physician and the social worker believed that B.M. was psychotic and paranoid and a potential threat to the safety of others. Appellant's App. pp. 3-4. Therefore, the Hospital filed an application for emergency detention. The trial court authorized B.M.'s emergency detention and he was admitted to the Hospital.

On April 1, 2014, the Hospital filed a "Report Following Emergency Detention." Dr. A.P. Griffith examined B.M. and found "probable cause to believe that [he] is suffering from a psychiatric disorder and is dangerous . . . and requires continuing care and treatment." Id. at 6. Specifically, Dr. Griffith observed that B.M. is "very threatening/psychotic. Angry[.] Upset. Refuses care." Id. at 10. Dr. Griffith also believed that B.M. is dangerous and as a result of his psychiatric disorder, B.M. "presents a substantial risk that he" will harm others. Id. at 11. The doctor opined that B.M. "is in need of custody, care, or treatment in an appropriate facility." Id. at 11.

2

Also, on April 1, 2014, Jennifer Kaladow, Ph.D. filed a petition for involuntary commitment. Dr. Kaladow also agreed with Dr. Griffith that B.M. was suffering from a psychiatric disorder. Specifically, Dr. Kaladow noted that B.M. is "extremely psychotic. He is quite angry, upset & very threatening. He has been refusing treatment." Id. at 9.

The trial court held a hearing on the Hospital's petition on April 8, 2014. Dr. Griffith testified that during his emergency detention at the Hospital, B.M. "has been quite delusional." Tr. p. 2. B.M. believes

> that he is in fact in charge of the [] Securities Exchange Commission and that he is running websites throughout America and the world, believes that he has powers and abilities that one would typically say are not possible or true. [B.M.] does not believe that he has a mental illness. He believes that he is perfectly normal. He thinks that all the healthcare practitioners who have seen him are wrong.

Tr. pp. 2-3. Dr. Griffith stated that B.M. generally refuses to take medication and will not take his medication on a routine basis. B.M. sleeps only one to two hours per night. The doctor also testified that B.M. has an inflated self-esteem and "undoubtedly has bipolar mania disease." Tr. p. 3.

Dr. Griffith's believes that B.M. "is a threat to others if he does not get his way. He becomes irritable, hostile and has been in restraints and fighting staff on several occasions." Id. B.M. blames the Hospital staff for his hostile behavior. Dr. Griffith recommended that B.M. be committed to the Hospital for ninety days.

The trial court issued an Order of Commitment on April 8, 2014. The court concluded that B.M. suffers from mental illness, i.e. bipolar mania, and is dangerous to

3

others.  Therefore, the court ordered B.M. involuntarily committed to an appropriate facility for a period not to exceed ninety days.  B.M. now appeals.

## Standard of Review

When we review whether the evidence supports an involuntary mental health commitment, we consider only the evidence and reasonable inferences therefrom most favorable to the trial court's judgment.  In re Involuntary Commitment of A.M., 959 N.E.2d 832, 834-35 (Ind. Ct. App. 2011).  We cannot reweigh the evidence or judge the credibility of witnesses.  Id. at 835.  If the trial court's commitment reflects a conclusion that a reasonable person could have made, we will affirm the order even if other reasonable conclusions are possible.  Id.

## Discussion and Decision

In Indiana, a court may order a temporary commitment of not more than ninety days for an individual who is mentally ill and either dangerous or gravely disabled.  Ind. Code § 12-26-6-1.  B.M. argues that the Hospital failed to prove, by clear and convincing evidence, that he is a dangerous individual, and therefore, the trial court's involuntary commitment order is not supported by sufficient evidence.[1]

"Civil commitment is a significant deprivation of liberty that requires due process protections."  C.J. v. Health & Hosp. Corp. of Marion County, 842 N.E.2d 407, 409 (Ind. Ct. App. 2006) (citing Addington v. Texas, 441 U.S. 418, 425 (1979)).  "Because

---

[1] The issue raised in this appeal is arguably moot because ninety days have elapsed since the trial court issued its order, and B.M. has likely been released from his involuntary commitment.  However, we will address the issue raised in this appeal on its merits because, as we stated in In re Commitment of J.B., 766 N.E.2d 795, 798 (Ind. Ct. App. 2002), "[t]he question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society" and is likely to recur.

everyone exhibits some abnormal conduct at one time or another, loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior." Commitment of M.M. v. Clarian Health Partners, 826 N.E.2d 90, 97 (Ind. Ct. App. 2005), trans. denied.

The petitioner is required to prove by clear and convincing evidence that the individual is (1) mentally ill and (2) either dangerous or gravely disabled and that (3) commitment is appropriate. Ind. Code § 12-26-2-5(e). The petitioner is not required to prove that the individual is both dangerous and gravely disabled; however, "[t]here is no constitutional basis for confining a mentally ill person who is not dangerous and can live safely in freedom." Commitment of J.B. v. Midtown Mental Health Ctr., 581 N.E.2d 448, 451 (Ind. Ct. App. 1991), trans. denied; see also M.L. v. Meridian Servs., Inc., 956 N.E.2d 752, 755 (Ind. Ct. App. 2011).

The trial court found that B.M. suffers from bipolar mania,[2] and B.M. does not dispute this finding. However, B.M. does dispute the trial court's finding that he is dangerous to others.[3] See Appellant's App. p. 14.

Dangerous "means a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm . . . others." Ind. Code § 12-7-2-53. "Dangerousness must be shown by clear and convincing evidence indicating that the behavior used as an index of a person's dangerousness would not occur but for the

---

[2] "Mental illness" is defined as a "psychiatric disorder that . . . substantially disturbs and individual's thinking, feeling, or behavior; and [] impairs the individual's ability to function." Ind. Code § 12-7-2-130.

[3] The trial court did not find that B.M. is gravely disabled.

person's mental illness." Commitment of C.A. v. Center for Mental Health, 776 N.E.2d 1216, 1218 (Ind. Ct. App. 2002).

"The determination of dangerousness under the involuntary commitment statute has always been a question of fact for the trial court to decide." Commitment of S.T. v. Cmty. Hosp. North, 930 N.E.2d 684, 689 (Ind. Ct. App. 2010).

> Only the trial court sees the witnesses on the stand, their demeanor in testifying, their candor, or lack of candor, in disclosing facts about which they have knowledge. Juries and trial courts, quite often, properly, give more weight to the demeanor of witnesses than to the substance of their statements in the determination of truth. An Appellate Court, considering only the statements, is denied the assistance of this necessary factor.

Id. (quoting Lowman v. Lowman, 109 Ind. App. 163, 164, 33 N.E.2d 780, 785 (1941)).

In support of his argument that the record lacks clear and convincing evidence that he is dangerous to others, B.M. attempts to analogize his case to In re Commitment of Steinberg, 821 N.E.2d 385 (Ind. Ct. App. 2004) and J.S. v. Center for Behavioral Health, 846 N.E.2d 1106 (Ind. Ct. App. 2006). In those cases, our court concluded that the petitioner failed to present sufficient evidence that the committed individual was dangerous.

Unlike the circumstances in this case, in Steinberg, the only evidence was that Steinberg had trouble controlling his anger and that, on one occasion, likely while intoxicated, he pointed a firearm at a group of individuals who threatened him and his roommate. The doctor who performed the psychiatric evaluation did not conclude that Steinberg was dangerous to himself or others, just that he was gravely disabled. 821 N.E.2d at 387.

6

In J.S., the psychiatrist's primary concern was that J.S. was gravely disabled. The doctor testified that J.S. could lash out against someone if she feels assaulted or manipulated. We concluded that the doctor's "vague 'lashing out' assertion" did not meet the threshold of dangerousness. 846 N.E.2d at 1112. In this case, Dr. Griffith was most concerned that B.M. was dangerous to others as evidenced by his threatening and hostile behavior toward the hospital staff.

In this case four medical professionals examined B.M. and concluded that B.M. suffers from mental illness. B.M.'s mental illness causes him to be delusional, psychotic, hostile, upset, angry, and threatening. During his emergency detention at the Hospital, B.M. had to be placed in restraints and fought with Hospital staff on several occasions. And B.M. does not believe that he is mentally ill and refuses to take his medication. Dr. Griffith opined that B.M. is dangerous and as a result of his psychiatric disorder, B.M. "presents a substantial risk that he" will harm others. Appellant's App. p. 11.

No evidence in the record indicates that B.M. has actually harmed anyone, but a trial court is not required to wait until an individual commits a physical act before determining that the individual poses a substantial risk of harm to others. M.Z. v. Clarian Health Partners, 829 N.E.2d 634, 638 (Ind. Ct. App. 2005), trans. denied (citation omitted). See e.g., In re Commitment of T.K. v. Dep't of Veterans Affairs, 993 N.E.2d 245, 250 (Ind. Ct. App. 2013) (concluding that evidence of threats and hostility towards hospital staff and T.K.'s denial that he suffers from mental illness established that T.K. was a danger to others). For all of these reasons, we conclude that the trial court's

7

finding that B.M. is a danger to others is supported by sufficient evidence.  We therefore affirm the trial court's order of commitment.

Affirmed.

CRONE, J., concurs.

RILEY, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE MENTAL | ) | |
| HEALTH PROCEEDINGS OF B.M. | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 53A04-1405-MH-210 |
| | ) | |
| INDIANA UNIVERSITY HEALTH, | ) | |
| HOSPITAL | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

**RILEY, Judge, dissenting**

I respectfully disagree with the majority's decision to affirm the trial court's involuntary commitment of B.M. Focusing on the dangerousness prong of the Statute, the majority concluded that sufficient evidence was presented establishing B.M. to be a danger to others. I disagree.

"Dangerous" means "a condition in which an individual[,] as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." I.C. § 12-7-2-53. As noted by the majority, and I agree, the "trial court is not required to

9

wait until a physical act is visited upon an individual [] before determining that an individual poses a significant risk of harm to others." See *Commitment of Gerke*, 696 N.E.2d 416, 421 (Ind. Ct. App. 1998) (Gerke had threatened his mother, damaged property, and was overall very violent). In a similar vein, we have found the requirement of dangerousness to be supported by a patient's unwillingness to take medication. See, *e.g., Commitment of C.A.,* 776 N.E.2d 1216, 1218 (Ind. Ct. App. 2002). However, this line of case law is precedented by the distinguishing fact that the patients had already displayed unprovoked acts of physical aggression or had the potential to perform unprovoked acts of physical aggression based on thought processes influenced by their mental illness. See, *e.g., M.Z. v. Clarian Health Partners*, 829 N.E.2d 634, 640 (Ind. Ct. App. 2005) (M.Z. removed a gun from his gun safe daily based on his delusional belief that he was protecting himself). In other words, abnormal risk-taking will not support a finding a person is dangerous as defined by statute, unless that risk-taking is caused by mental illness. *Commitment of J.B. v. Midtown Mental Health Ctr.,* 581 N.E.2d 448, 452 (Ind. Ct. App. 1991), *trans. denied*. As such, the justification to order an involuntary commitment turns on the connection between the individual's proclivity for dangerousness and his or her mental illness.

I find that nexus to be absent here. "[F]our medical professionals examined B.M. and concluded that B.M. suffers from mental illness." Slip Op. p. 7. It was noted that B.M. was "extremely psychotic," "angry, and "very threatening." (Appellant's App. p. 9). At the hearing, Dr. Griffith testified that B.M. fought healthcare staff on several occasions and had to be placed in restraints. However, notably lacking from the record

and Dr. Griffith's testimony is an explanation that the exhibited aggressive behavior was connected with B.M.'s delusions. Rather, Dr. Griffith agreed that B.M. has not been a threat to the general public. Because of Dr. Griffith's deficient testimony and the incomplete record before us, B.M.'s clarification that he became aggressive because he refused to be forcibly medicated is not contradictory.

Even though B.M. is irritable and hostile, a commitment cannot be based solely on his display of idiosyncratic behavior, albeit maybe unusual and even undesirable, without any display of danger to himself or others. As no clear and convincing evidence confirms that B.M.'s displayed aggression derived from his delusions, I cannot conclude that B.M. is dangerous within the perimeters of the involuntary commitment statute. Because "[t]here is no constitutional basis for confining a mentally ill person who is not dangerous[,]" I would reverse the trial court's order of involuntary commitment. See *Commitment of J.B.,* 581 N.E.2d at 451.