**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 23 2013, 5:53 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ANNA KIRKMAN**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE CIVIL COMMITMENT OF: N.F., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-MH-306 |
| | ) | |
| WISHARD HEALTH SERVICES, MIDTOWN COMMUNITY MENTAL HEALTH CENTER, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald S. Zore, Judge
Cause No. 49D08-1302-MH-5524

**December 23, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, N.F., appeals the trial court's order of involuntary commitment.

We affirm.

## ISSUE

N.F. raises one issue on appeal, which we restate as: Whether the Appellee-Petitioner, Wishard Health Services, Midtown Community Mental Health Center (Wishard), presented clear and convincing evidence to support the trial court's involuntary commitment order.

## FACTS AND PROCEDURAL HISTORY

On February 12, 2013, N.F.'s family sought an emergency detention and treatment for N.F., then twenty-nine years old, because of his increased paranoia and threats made to family and other individuals. When law enforcement officers took N.F. into custody, he resisted their efforts to issue the emergency detention and was placed under arrest for resisting law enforcement. That same day, N.F. presented to the psychiatric emergency room at Wishard on an emergency detention as a Marion County prisoner. Because he exhibited "symptoms consistent with paranoid delusions," he was admitted to Wishard's inpatient unit. (Transcript p. 6). On February 22, 2013, Wishard filed a petition for involuntary commitment.

On March 7, 2013, the trial court conducted a hearing on the petition. During the hearing, Dr. Michael DeMotte (Dr. DeMotte), N.F.'s attending psychiatrist at Wishard,

testified that N.F. suffered from either a major depressive disorder with psychotic features or a schizoaffective disorder. Dr. DeMotte stated that N.F.'s delusions and paranoia raise to "the level of potential concern for others, [], and the content of some of the delusions that he has already harmed other people." (Tr. p. 9). During consultations, N.F. expressed a belief that people in his apartment complex and neighborhood were harassing him. N.F. monitored them, tracked them down, noted license plate numbers, and questioned people. N.F. also appeared to be very concerned with his safety and desired to have weapons and carry a handgun. N.F. described an incident—unverifiable by Dr. DeMotte—where he had thrown a law enforcement officer off an overpass after being stopped by him. Dr. DeMotte testified that N.F. declined any medications during the course of the hospitalization. While N.F. has admitted that he suffers from some symptoms that could be consistent with depression, he refuses to be medicated as it "will discredit him as a witness" and "affect his ability to carry a firearm." (Tr. p. 11). N.F. has a lifetime firearms permit and had previously owned a handgun. N.F. also recently had lost his employment and housing, and Dr. DeMotte expressed concerns about N.F.'s overall functioning in the community. Dr. DeMotte concluded that the severity of N.F.'s symptoms warrant treatment with antipsychotic medications on a commitment basis.

N.F.'s sister, A.R., testified that N.F. had made threats towards her twenty-month-old son. N.F. believed he had seen a family member implant a mechanical device in his nephew's urethra. N.F. told his sister that "he wasn't sure how long he was going to let [her son] live, because [her son] was . . . born into the world to be a spy against him."

(Tr. p. 20). N.F. was convinced this was related to a long-standing conspiracy involving Minnesota governors, the mayor, the Supreme Court, and the United Nations.

At the conclusion of the evidence, the trial court found that N.F. is "dangerous to himself or others"[1] and is "gravely disabled." (Appellant's App. p. 7). The trial court ordered N.F. to be temporarily committed until June 5, 2013.

N.F. now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

N.F's period of involuntary commitment has already passed. Generally we dismiss cases that are moot, but a moot case may be decided on its merits when it involves cases of great public interest, such as involuntary commitment, that are likely to recur. *Commitment of S.T. v. Cmty. Hosp. N.*, 930 N.E.2d 684, 687 (Ind. Ct. App. 2010), *reh'g denied*.

In Indiana, a person may be involuntarily committed if the petitioner proves by clear and convincing evidence that the individual is mentally ill and either dangerous or gravely disabled and that commitment is appropriate. Ind. Code § 12-26-2-5. Civil commitment is a significant deprivation of liberty that requires due process protections. *C.J. v. Health & Hosp. Corp. of Marion Cnty.*, 842 N.E.2d 407, 409 (Ind. Ct. App. 2006). Upon review of an order for involuntary commitment, we will consider only the evidence favorable to the judgment and all reasonable inferences therefrom. *Id*. If the trial court's

---

[1] In his appellate brief, N.F. notes that Wishard has to establish dangerousness to others **and** to himself. Although the trial court, in its written order, indicated that N.F. "is ( √ ) dangerous to self or ( √ ) dangerous to others as defined in I.C. [§] 12-7-2-53," the language of the order follows the statute, which clearly intends an alternate level of dangerousness—either to self **or** to others. *See* Appellant's App. p.7; Appellant's Br. p. 6.

commitment order represents a conclusion that a reasonable person could have drawn, the order must be affirmed, even if other reasonable conclusions are possible. *Id.*

N.F. does not dispute the trial court's conclusion that he suffers from a mental illness; rather, his sole contention revolves around the trial court's determination that he is dangerous or gravely disabled. Although the trial court found that N.F. was both dangerous and gravely disabled, in order to carry its burden of proof, Wishard had to establish that N.F. was dangerous *or* gravely disabled; it did not have to satisfy both elements. *See C.J.*, 842 N.E.2d at 409.

Indiana Code section 12-7-2-53 defines "dangerous" as "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." "Dangerousness must be shown by clear and convincing evidence indicating that the behavior used as an index of a person's dangerousness would not occur but for the person's mental illness." *Commitment of M.M. v. Clarian Health Partners*, 826 N.E.2d 90, 97 (Ind. Ct. App. 2005), *trans. denied.* Importantly, a trial court is not required to wait until harm had nearly or actually occurred before determining that an individual poses a substantial risk of harm to others. *Matter of Commitment of Gerke*, 696 N.E.2d 416, 421 (Ind. Ct. App. 1998) (holding that a commitment premised upon a trial court's prediction of dangerous future behavior, without prior evidence of the predicted conduct, was valid, and observing "[t]he old adage of 'the dog gets one bite' does not, and should not, apply in the context of commitment proceedings, despite the severe restrictions on liberty imposed by commitment to a mental facility.")).

Here, the trial court was presented with testimony from Dr. DeMotte that N.F. suffered from either a major depressive disorder with psychotic features or a schizoaffective disorder. Dr. DeMotte testified that, left untreated, N.F.'s mental illness presented a substantial risk that N.F. would harm others. Specifically, N.F.'s delusional thinking already had led him to believe he had used force to throw a law enforcement officer off an overpass and that he was justified in monitoring and confronting individuals in his apartment complex whom he believed were harassing him. More worrisome are N.F.'s overt threats of killing his twenty-month-old nephew because N.F. was convinced his nephew was implanted with a mechanical device and was born to spy against him. Additionally, N.F. appeared to be very concerned about his own safety and desired to own and carry handguns. Most notably, N.F. refused to be medicated because he believed it would adversely affect his ability to carry a firearm. Based on the record before us, a reasonable person could conclude that N.F. posed a substantial risk to others. Therefore, we find that Wishard presented clear and convincing evidence that N.F. is mentally ill and dangerous and that commitment is appropriate.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it entered the involuntary commitment order.

Affirmed.

MAY, J. and VAIDIK, J. concur