**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 25 2014, 9:45 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRISTOPHER L. CLERC**
Columbus, Indiana

ATTORNEY FOR APPELLEE:

**STEVEN J. COHEN**
Zeigler Cohen & Koch
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE INVOLUNTARY COMMITMENT OF G.M., | ) ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 03A01-1312-MH-533 |
| COLUMBUS REGIONAL HOSPITAL MENTAL HEALTH FACILITY and DR. MICHAEL STARK, | ) ) ) ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT
The Honorable James D. Worton, Judge
Cause No. 03D01-1310-MH-5812

**August 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

G.M. appeals the trial court's order involuntarily committing her to a mental health facility. G.M. presents a single issue for our review, namely, whether Columbus Regional Hospital Mental Health Facility ("the Hospital") presented sufficient evidence to support her commitment. We affirm.

## FACTS AND PROCEDURAL HISTORY

In late October 2013, G.M.'s family members observed that she was sleeping approximately one hour per night, and they became concerned about G.M.'s "behaviors." Tr. at 7. And on October 26, G.M. removed her clothes and attempted to baptize her ten-month-old son in a river in Indianapolis. Specifically, G.M. "waded into the river, and left [her] clothing on the shore, [and she] put her thumb into the water and touched it to [her son's] forehead." Id. at 32. G.M. then walked to a friend's house, "six doors down," and asked whether she could get dressed there. Id. G.M. subsequently stated that she had performed the baptism in an effort to "save her chemical child." Id. at 9.

On October 28, G.M.'s family members, including her husband, brought her to the Hospital for treatment. After they arrived, G.M. became "agitated" and was placed in restraints. Id. at 7. During the process of being restrained, G.M. kicked a security guard. Two injections of Ativan were administered to G.M. "to try to calm her." Id. When G.M. arrived at the Mental Health Unit at the Hospital, she activated a fire alarm.

Dr. Michael Stark evaluated G.M. after her admission to the Hospital. G.M. told Dr. Stark that "she was concerned about neighbors that lived downstairs" from her and that "she believed that they may have rebuilt her child like a robot." Id. at 8. G.M. stated

2

that "she was concerned about her seven-year-old [son] already being destroyed by the people downstairs." Id. at 24. G.M. also told Dr. Stark that her child "had super-human jaws or mechanical jaws that she was concerned about." Id. at 9. Dr. Stark noted that G.M. was "rather hostile and demanding on initial assessment" and she was "rather disorganized and aloof" and "intrusive." Id. Dr. Stark diagnosed G.M. with psychosis not otherwise specified. And Dr. Stark concluded both that G.M. presented a substantial risk of harm to others and was gravely disabled.

Following a hearing on G.M.'s involuntary commitment, the trial court concluded that G.M. was suffering from a mental illness; was dangerous to others and gravely disabled; and was in need of commitment to an appropriate facility for a temporary commitment not to exceed ninety days.[1] This appeal ensued.

## DISCUSSION AND DECISION

In In re Involuntary Commitment of A.M., 959 N.E.2d 832, 834-35 (Ind. Ct. App. 2011), we set out the applicable standard of review as follows:

> When reviewing whether the evidence supports an involuntary commitment, we look only to the evidence and reasonable inferences therefrom most favorable to the trial court's judgment. Commitment of S.T. v. Community Hosp. North, 930 N.E.2d 684, 687-88 (Ind. Ct. App. 2010). We may not reweigh the evidence or judge the credibility of witnesses. Id. "'If the trial court's commitment order represents a conclusion that a reasonable person could have drawn, we will affirm the order even if other reasonable conclusions are possible.'" Id. (quoting Commitment of M.M., 826 N.E.2d 90, 96 (Ind. Ct. App. 2005), trans. denied).

---

[1] Neither party asserts that this case should be dismissed as moot, but it is likely that G.M. has been released from her involuntary commitment. Regardless, as we stated in In re Commitment of J.B., 766 N.E.2d 795, 798 (Ind. Ct. App. 2002), "[t]he question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society" and is likely to recur. Thus, we address G.M.'s appeal on the merits.

However, civil commitment is a significant deprivation of liberty, and it requires due process protections. C.J. v. Health and Hosp. Corp. of Marion County, 842 N.E.2d 407, 409 (Ind. Ct. App. 2006) (citing Addington v. Texas, 441 U.S. 418, 425 (1979)). The petitioner must show "'that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior.'" In re Commitment of Bradbury, 845 N.E.2d 1063, 1065 (Ind. Ct. App. 2006) (quoting Addington, 441 U.S. at 427). A person may be involuntarily committed in Indiana only if the petitioner proves by clear and convincing evidence that (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate. Ind. Code § 12-26-2-5(e)(1); C.J., 842 N.E.2d at 409.

On appeal, G.M. does not dispute that she is mentally ill. But G.M. contends that the evidence is insufficient to show that she is either dangerous or gravely disabled. Because the statute is written in the disjunctive, we need only consider whether the evidence is sufficient to support either conclusion. See I.C. § 12-26-2-5(e)(1).

Indiana Code Section 12-7-2-96 defines "gravely disabled" as a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual: (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Here, the Hospital presented evidence that G.M. was sleeping approximately one hour per night, believed that her children had been "destroyed" and/or turned into robots, and attempted to baptize her child in an effort to "save" him. Tr. at 24. G.M. told Dr. Stark that she was having "lots" of auditory hallucinations. Id. at 52. Dr. Stark diagnosed her with psychosis not otherwise specified, and he concluded both that G.M. presented a substantial risk of harm to others and was gravely disabled. Finally, Dr. Stark

4

testified that G.M. did not have any concerns about her behavior prior to her admission to the hospital, and she did not think she needed "ongoing treatment" or medication. Id. at 13. In other words, G.M. did not have insight into her illness.

G.M.'s contention on appeal that the Hospital failed to present sufficient evidence to support her commitment amounts to a request that we reweigh the evidence, which we will not do. We hold that the Hospital presented sufficient evidence to show that G.M. is gravely disabled. See A.M., 959 N.E.2d at 836 (holding evidence sufficient to show respondent gravely disabled given non-compliance with medication regimen, delusions, no insight into illness, agitation, and trouble sleeping); see also J.S. v. Center for Behavioral Health, 846 N.E.2d 1106, 1113 (Ind. Ct. App. 2006) (holding evidence sufficient to show respondent gravely disabled given non-compliance with medication regimen, delusions, and no insight into illness).

Again, G.M. has conceded that she is mentally ill, and we hold that the evidence is sufficient to show that she is gravely disabled. G.M. does not challenge the final element of Indiana Code Section 12-26-2-5(e)(2), namely, that commitment of G.M. is appropriate. Indeed, Dr. Stark testified that the "least restrictive treatment plan" for G.M. was to keep her at the Hospital for three to five days until she "stabilized" and then continue treatment on an outpatient basis. Tr. at 15-16. We hold that the Hospital presented sufficient evidence to support G.M.'s involuntary commitment.

Affirmed.

BAILEY, J., and PYLE, J., concur.

5