

FILED

Oct 18 2018, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Bryan H. Babb
Sarah Thompson Parks
Bose McKinney & Evans LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Civil Commitment of: <br><br> L.J., <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Health and Hospital Corp. d/b/a Eskenazi Health CMHC, <br><br> *Appellee-Petitioner* | October 18, 2018 <br><br> Court of Appeals Case No. 18A-MH-152 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Steven R. Eichholtz, Judge <br><br> The Honorable Kelly Scanlan, Commissioner <br><br> Trial Court Cause No. 49D08-1712-MH-47185 |

**May, Judge.**

[1] L.J. appeals an order of regular commitment signed only by the commissioner who held the hearing on the commitment petition. L.J. argues the order is invalid because the trial court judge failed to "enter the final order" as is required by Indiana Code section 33-23-5-9(a).

[2] Rather than sign the commitment order, the trial court judge signed an order under a separate cause number that purported to approve all decisions entered by commissioners and magistrates during the week L.J.'s commitment hearing was held. That separate order contained no reference to L.J.'s civil commitment. Nor does the Chronological Case Summary ("CCS") for L.J.'s civil commitment contain any reference to the judge's entry of the business record order purporting to approve the commissioner's actions during the week of L.J.'s commitment.

[3] Under these facts, we hold the trial court judge's order was ineffective to demonstrate the sitting judge considered the merits of L.J.'s case and entered the final order as required by statute. As there is no final order from which L.J. could appeal, we dismiss this appeal. On remand the trial court judge should review whether the evidence in the record supports the commissioner's determination and enter a final order as to L.J.'s civil commitment.

# Facts and Procedural History

[4] On December 27, 2017, under cause number 49D08-1712-MH-047185, Health and Hospital Corporation, d/b/a Eskenazi Health Midtown Community Mental Health (hereinafter "Eskenazi"), filed an application for emergency detention of L.J. based on alleged mental illness. The next day, Eskenazi filed a report that included a doctor's statement regarding L.J.'s condition, diagnosis, and recommended treatment. On January 2, 2018, the judge reviewed the

filings, found probable cause to continue L.J.'s detention, and set an evidentiary hearing for two days later.

[5] On January 4, 2018, the commissioner held the hearing on the petition for regular commitment of L.J. At the conclusion of that hearing, the commissioner concluded L.J. should be involuntarily committed based on her findings L.J. was "gravely disabled" and "dangerous to others." (App. Vol. 2 at 6.) The commissioner signed and dated an order of regular commitment that same day. The line on which the commissioner signed indicated the order was to have been signed by the judge, (*id.* at 7), but the judge's signature does not appear on that document. The CCS indicates the commissioner's entry of that order and her submission of that order to NICS,[1] but nothing in the record indicates the commissioner was appointed special judge or judge *pro tem* for this case. There were no further CCS entries indicating the judge reviewed the case or entered a separate final order.[2]

# Discussion and Decision

---

[1] NICS is the "National Instant Criminal Background Check System," which is maintained by the FBI. https://www.fbi.gov/services/cjis/nics (last visited October 2, 2018).

[2] The CCS contains an additional entry on January 4, 2018, that in its entirety provides:

**Mentally Ill and Dangerous or Gravely Disabled** (Judicial Officer: Eichholtz, Steven R)[.]

(App. Vol. 2 at 11) (formatting in original). Neither party addresses this entry in its brief. As the vague nature of that entry leaves us uncertain its meaning, and as neither party has so asserted, we decline to infer therefrom that the judge reviewed and confirmed the commissioner's decision as the court's final order.

[6]     L.J. appeals the validity of the order committing her to Eskenazi because it was signed by the commissioner but not by the judge. Commissioners can be appointed to assist with the Probate Court's caseload:

> An appointed probate hearing judge or probate commissioner shall be vested by the judge of the probate division with suitable powers for the handling of all probate matters of the court, including the following:
>
> (1) Fixing of all bonds.
>
> (2) Auditing accounts of estates, guardianships, and trusts.
>
> (3) Accepting reports, accounts, and settlements filed in the court.
>
> (4) Appointing personal representatives, guardians, and trustees.
>
> (5) Probating wills.
>
> (6) Taking or hearing evidence on or concerning matters described in this subsection or any other probate, guardianship, or trust matters in litigation before the court.
>
> (7) Enforcing court rules.
>
> (8) Making reports to the court concerning the judge's or commissioner's doings in the proceedings described in this subsection, including reports concerning the commissioner's findings and conclusions regarding the proceedings.

> However, all matters handled by a hearing judge or commissioner under this subsection are under the final jurisdiction and decision of the judge of the probate division.

Ind. Code § 33-33-49-16(a). As that statute indicates, a commissioner in probate court has the authority to hear evidence and report findings and conclusions, but the "final jurisdiction and decision" belong to the judge. *Id.*

[7] Another subsection of that same statute provides:

> A master commissioner appointed by the court under this section has the powers and duties prescribed for a magistrate under IC 33-23-5-5 through IC 33-23-5-9. A master commissioner shall report the findings in each of the matters before the master commissioner in writing to the judge or judges of the division to which the master commissioner is assigned or as designated by rules of the court.

Ind. Code § 33-33-49-16(e). As to the power of magistrates, the Indiana Code in relevant part[3] provides:

> (a) Except as provided under subsection (b), *a magistrate shall report findings in an evidentiary hearing, a trial, or a jury's verdict to the court. The court shall enter the final order.*

---

[3] Indiana Code section 33-23-5-5 provides a list of eighteen activities a magistrate "may do," such as compel the attendance of witnesses, administer oaths, punish contempt, enforce court rules, and conduct trials. That section does permit magistrates to enter final orders in some specified causes of action, none of which are relevant here. *See* I.C. § 33-23-5-5 (providing power to enter final order in some criminal, small claims, and protective order cases).

(b) If a magistrate presides at a criminal trial or a guilty plea hearing, the magistrate may do the following:

(1) Enter a final order.

(2) Conduct a sentencing hearing.

(3) Impose a sentence on a person convicted of a criminal offense.

Ind. Code § 33-23-5-9 (emphasis added). Based thereon, our Indiana Supreme Court has stated:

Magistrates may enter final orders in criminal cases, but otherwise may not enter a final appealable order unless sitting as a judge pro tempore or a special judge. Instead they may only report findings, while the court shall enter the final order.

*In re Adoption I.B.*, 32 N.E.3d 1164, 1173 n.6 (Ind. 2015) (internal citations and quotations omitted). Thus, a commissioner does not have the authority to enter a final order of regular commitment.

[8] Eskenazi "does not dispute that under ordinary circumstances and with some exceptions, a magistrate judge on his or her own does not have the authority to issue a final appealable order." (Br. of Appellee at 12) (formatting in original). Instead, Eskenazi asserts we should hold the trial court judge "sufficiently

indicated his approval of the Order" by entering an order under a separate cause number.[4] (*Id.*)

[9] On January 10, 2018, under cause number 49D08-1708-CB-030844, the probate court judge signed an "APPROVAL ORDER FOR RECORD OF JUDGMENTS AND DAILY ORDERS." (App. Vol. 2 at 8) (capitalization in original). That order provides:

> The court being advised by the magistrate, commissioner and/or referee of this court approves the findings and recommendations of the magistrate, commissioner and/or referee and adopts the findings and recommendations as the order in all cases heard 1-2-2018 through 1-5-2018[.]

(*Id.*) The "CB" in the cause number on that order indicates the case is a "Court Business record—i.e. court orders that refer to non-case matters such as the appointment of judge pro tem, drawing the jury, etc." Ind. Administrative Rule 8(B)(3). That business record order contains no reference to L.J.'s civil commitment such that we could confirm the sitting judge intended to affirm the commissioner's decision as the final order. Nor does the CCS for L.J.'s involuntary commitment action contain an entry indicating the judge reviewed this case and then entered the affirmation of the commissioner's work under

---

[4] Eskenazi also asserts we should hold L.J. waived the opportunity to appeal the judge's failure to enter the final order by not objecting at the hearing. However, the commissioner had authority to conduct the hearing and enter findings and conclusions. *See* Ind. Code § 33-33-49-16(a)(6) & (a)(8). Thus, an objection to the commissioner at the hearing would have been untimely. Furthermore, as this case involves the peculiar use of a court business record, which we disapprove, we choose to address this cause on the merits.

that business record cause number. For all these reasons, we reject the entry of a business record order as a method for meeting the statutory requirement that the court "enter the final order" in each trial conducted by a commissioner or magistrate. Ind. Code § 33-23-5-9(a).

[10] The Indiana Legislature has made clear which decisions may be made by a commissioner or magistrate alone and which decisions by a commissioner or magistrate must be reviewed by a judge. *Compare* I.C. §§ 33-23-5-5 & 33-23-5-9(b) *with* I.C. §§ 33-33-49-16(a) & 33-23-5-9(a). The use of a business record order to summarily affirm multiple unspecified decisions by a commissioner in no way suggests the trial judge considered the merits of those decisions. In such a circumstance, we are left without any assurance that the court fulfilled its obligation to review and "enter the final order." I.C. § 33-23-5-9(a). Because "[r]eview of final orders by the presiding judge is not a mere technicality[,]" *In re Hawkins*, 902 N.E.2d 231, 240 (Ind. 2009) (judge and commissioner sanctioned in disciplinary proceedings for "unlawful practice of permitting a commissioner to enter final PCR orders"), "[w]e trust the court will observe this necessity" in all future cases. *I.B.*, 32 N.E.3d at 1173 n.6 (demanding trial court observe necessity of court entering final order on remand).

## Conclusion

[11] Because we reject the trial court's entry of a business record order with no reference to specific case numbers as a method for adopting the findings and conclusions of a magistrate or commissioner as to any specific case heard

during a specified time period, the commitment order challenged by L.J. is not a final order. Accordingly, we dismiss this appeal and remand for the probate court judge to review the matter and enter a final order.

[12] Dismissed and remanded.

Baker, J., and Robb, J., concur.