FILED

Jan 14 2019, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Megan Shipley
Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Bryan H. Babb
Sarah T. Parks
Anna Kirkman
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the
Commitment of C.N.

C.N.

*Appellant/Respondent,*

v.

Eskenazi Health/Midtown
CMHC,

*Appellee/Petitioner.*

January 14, 2019

Court of Appeals Case No.
18A-MH-641

Appeal from the Marion Superior
Court

The Honorable Kelly Scanlan,
Commissioner

The Honorable Steven R.
Eichholtz, Judge

Trial Court Cause No.
49D08-1802-MH-6841

**Pyle, Judge.**

# Statement of the Case

C.N. ("C.N.") appeals the trial court's order for his involuntary regular civil commitment.[1] He argues that: (1) the trial court's order was defective because it contained only the commissioner's signature and lacked the required judge's signature; (2) there was insufficient evidence to prove that he was "gravely disabled;" (3) there was insufficient evidence to support the trial court's forced medication order; and (4) there was insufficient evidence that he needed to be committed for longer than ninety days. Because we conclude that there was insufficient evidence to prove that C.N. was "gravely disabled," we reverse the trial court's decision and remand for the trial court to vacate the order of regular commitment.[2]

We reverse and remand with instructions.

---

[1] In *Civil Commitment of T.K. v. Dep't of Veterans Affairs,* 27 N.E.3d 271, 273 n. 1 (Ind. 2015), the Indiana Supreme Court explained:

> In Indiana, an adult person may be civilly committed either voluntarily or involuntarily. Involuntary civil commitment may occur under four circumstances if certain statutorily regulated conditions are satisfied: (1) "Immediate Detention" by law enforcement for up to 24 hours; (2) "Emergency Detention" for up to 72 hours; (3) "Temporary Commitment" for up to 90 days; and (4) "Regular Commitment" for an indefinite period of time that may exceed 90 days.

(internal citations omitted).

[2] As a preliminary matter, we note that C.N. is correct that Indiana law expressly bars the commissioner from entering a final appealable order in this case. *See T.W. v. St. Vincent Hospital and Health Care Center, Inc.*, _ N.E.3d _, 2018 WL 6072342 at *2 (Ind. Ct. App. Nov. 21, 2018) (citing IND. CODE § 33-23-5-8), *trans. pending.* However, C.N. has waived appellate review of this issue because he did not object to the commitment order at any point prior to this appeal. *See T.W.* at *3. Further, because we reverse the commitment order, we need not address whether there was sufficient evidence to support the trial court's forced medication order or whether there was sufficient evidence that C.N. needed to be committed for longer than ninety days.

# Issue

Whether there was sufficient evidence to support the trial court's regular commitment of C.N.

# Facts

In February 2018, Eskenazi Health/Midtown Community Mental Health ("Eskenazi") filed an application for the emergency detention of C.N. The physician completing the application alleged that C.N. was gravely disabled and a danger to himself because he had "an established history of Bipolar Disorder with Psychotic features, [was] not in treatment, ha[d] grandiose delusions of being a special agent, and ha[d] entered [a] secure government area recently under false pretenses." (App. Vol. 2 at 12). Based on this application, the trial court issued an order authorizing the emergency detention of C.N.

Following C.N.'s detention, Eskenazi filed a report that included a physician's statement from Dr. Aimee Patel ("Dr. Patel"). In this statement, Dr. Patel alleged that C.N. needed to be committed to an appropriate facility because he was gravely disabled. Specifically, Dr. Patel alleged that C.N. was unable to provide for his food, clothing, shelter, or other essential human needs and had a substantial impairment that resulted in his inability to function independently. Dr. Patel also alleged that C.N. had "lost housing and employment due to symptoms." (App. Vol. 2 at 23).

At C.N.'s commitment hearing, Dr. Patel testified that she had examined C.N., and that although he had "historically carried a diagnosis of bi-polar disorder," Dr. Patel had "adjusted" his diagnosis to schizoaffective disorder. (Tr. 8). Dr.

Patel further testified that C.N. was gravely disabled as demonstrated by his recent eviction from his housing. Dr. Patel also testified that C.N. was employed and that he was eating and taking care of his hygiene needs while at Eskenazi. In addition, Dr. Patel testified that C.N. was "convinced that he [was] a police officer, that he work[ed] for the FBI. That he ha[d] had involvement with the DEA." (Tr. 12). She also testified that C.N. had recently had weapons and a gas mask confiscated from his apartment. Dr. Patel recommended that C.N. be detained pursuant to a regular rather than a temporary commitment order. She also recommended that he be transferred to outpatient care when his condition stabilized and that he be ordered to take all medications as prescribed at that time. During cross-examination, Dr. Patel acknowledged that following his eviction, C.N. had moved in with his significant other.

[6]     Also at the hearing, Indianapolis Metropolitan Police Department Behavioral Health Detective Lance Dardeen ("Detective Dardeen") testified that he had visited C.N. at home in December 2017. Although Detective Dardeen had not observed any weapons during the visit, the detective knew that a plastic hybrid BB gun had been removed from C.N.'s home earlier in December. During the twenty-minute visit, Detective Dardeen believed that C.N. had shown signs of mental illness such as disorganized thoughts and delusions. The detective opined that C.N.'s delusions would make him dangerous to the public. Detective Dardeen further testified that body armor, a gas mask, and a military

"footlocker type of thing" had been found in C.N.'s house earlier in the month. (Tr. 22).

[7] C.N. testified that he had never stated that he was an official member of the police department or the FBI. He also testified that he was employed at a home improvement company and that he earned ten to fifteen dollars an hour depending on the job. C.N. further testified that he was living with his significant other in a house that she had recently inherited from her grandmother. C.N. explained that he was helping his significant other "get that house back in shape and fixed up." (Tr. 28).

[8] At the conclusion of the hearing, the trial court concluded that C.N. suffered from the mental illness schizoaffective disorder and that he was gravely disabled because he was demonstrating a substantial impairment in his judgment and reasoning that resulted in his inability to function independently. The trial court further concluded that it did "not find admissible clear and convincing evidence that [C.N.] was a danger to himself or others." (Tr. 35). Thereafter, the trial court granted Eskenazi's Petition for C.N.'s regular commitment for a period of time expected to exceed ninety days. The trial court also ordered C.N. to take all medications as prescribed upon attaining outpatient status. C.N. now appeals.

## Decision

[9] C.N. argues that the trial court erred in ordering his regular commitment because there was insufficient evidence to prove that he was "gravely disabled"

as required by statute. *See* IND. CODE § 12-7-2-96. In reviewing the sufficiency of the evidence to support a civil commitment, "'an appellate court will affirm if, considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find the [necessary elements] proven by clear and convincing evidence.'" *Commitment of M.E. v. Dep't of Veteran's Affairs*, 64 N.E.3d 855, 861 (Ind. Ct. App. 2016) (quoting *T.K.*, 27 N.E.3d at 273) (internal quotation omitted)).

[10]     INDIANA CODE § 12-26-2-5(e) provides that the petitioner in a case involving the involuntary commitment of a mentally ill individual must prove by clear and convincing evidence that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate. Clear and convincing evidence requires proof that the existence of a fact is "highly probable." *M.E.*, 64 N.E.3d at 861. "'There is no constitutional basis for confining a mentally ill person who is not dangerous and can live safely in freedom.'" *Id.* (quoting *Commitment of J.B. v. Midtown Mental Health Ctr.*, 581 N.E.2d 448, 451 (Ind. Ct. App. 1991), *trans. denied*).

[11]     C.N. does not dispute the trial court's finding that he is mentally ill. However, he argues that there was insufficient evidence to support the trial court's finding that he is gravely disabled. INDIANA CODE § 12-7-2-96 defines "gravely disabled" as:

> A condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:

> > (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>
> > (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

[12] Because this statute is written in the disjunctive, a trial court's finding of grave disability generally survives if we find that there was sufficient evidence to prove either that the individual was unable to provide for his basic needs or that his judgment, reasoning, or behavior was so impaired or deteriorated that it resulted in his inability to function independently. *Commitment of B.J. v. Eskenazi Hosp./Midtown CMHC*, 67 N.E.3d 1034, 1039 (Ind. Ct. App. 2016). Here, however, the trial court concluded that C.N. was gravely disabled only because he had demonstrated a substantial impairment in his reasoning that resulted in his inability to function independently.

[13] Our review of the evidence reveals otherwise. Specifically, the evidence reveals that C.N. supported himself with a job working for a home improvement company where he earned ten to fifteen dollars per hour. He also lived with his significant other in a house that she had inherited from her grandmother. C.N. was helping his significant other fix up the house. This evidence simply does not support the trial court's conclusion that C.N. was gravely disabled. *See T.K.,* 27 N.E.3d at 276 (explaining that commitment because of grave disability lacked clear and convincing evidence where the committed person rented his own home, lived by himself, held full time employment, and owned two

vehicles while making payments on a third); *B.J.*, 67 N.E.3d at 1040 (concluding that the evidence was insufficient to support a finding of grave disability where B.J. "acted as a normal, productive member of society," maintaining a full-time job, and living with his parents).

[14] We further note that although there was testimony that C.N. had an extreme interest in law enforcement and had possessed a plastic BB gun, a gas mask, and a military footlocker, there is no evidence that he was criminally charged in connection with his interest or possessions. The United States Supreme Court has held that, since everyone exhibits some abnormal conduct at one time or another, "loss of liberty [through a commitment] calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior." *Addington v. Texas*, 441 U.S. 418, 426-27 (1979).

[15] Finding insufficient evidence to support the C.N.'s involuntary regular commitment, we reverse the trial court's decision and remand for the trial court to vacate the commitment.

[16] Reversed and remanded with instructions.

[17] Najam, J., and Crone, J., concur.