# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 20 2020, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Darren Bedwell
Marion County Public Defender Agency
– Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Jenny R. Buchheit
Stephen E. Reynolds
Sean T. Dewey
Ice Miller, LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Commitment of J.K., | April 20, 2020 |
| J.K. | Court of Appeals Case No. 19A-MH-1886 |
| *Appellant-Respondent,* | Appeal from the Marion Superior Court |
| v. | The Honorable Steven R. Eichholtz, Judge |
| Community Health Network, Inc., | The Honorable Melanie Kendrick, Magistrate |
| *Appellee-Petitioner.* | Trial Court Cause No. 49D08-1907-MH-27411 |

**Mathias, Judge.**

[1] J.K. appeals the Marion Superior Court's order temporarily committing him to Community North Hospital. He argues that the trial court's finding that he is gravely disabled as a result of mental illness is not supported by clear and convincing evidence.

[2] We affirm.

## Facts and Procedural History

[3] On July 3, 2019, twenty-six-year-old J.K. was observed standing in the middle of a street with moving traffic. He was aggressive with the police officers who removed him from the street and transported him to the emergency room at Community North Hospital ("the Hospital"). Shortly after his admission, the treating physician filed an application for emergency detention and a physician's statement. Dr. Syed Hasan examined J.K. and concluded that J.K. suffers from schizoaffective disorder, and as a result of his condition, he is gravely disabled. On July 9, 2019, Dr. Hasan requested that J.K. be temporarily committed to the Hospital for a period not to exceed ninety days.

[4] At the July 15, 2019, hearing on the petition for temporary commitment, Dr. Hasan stated that when J.K. was admitted to the hospital, he was nonverbal, aggressive, and agitated. Throughout J.K.'s hospital stay, Dr. Hasan observed that J.K. was agitated, confused, responding to internal stimuli, exhibiting odd behaviors, and denied his history of mental illness despite prior diagnoses and

hospital admission for schizoaffective disorder. J.K. also refused to take prescribed medication.

J.K. was homeless and lacked proper hygiene. He also was incapable of coherent conversation. J.K. exhibits "catatonic features where he has periods of freezing and pauses, posturing and just bizarre behaviors." Tr. pp. 8–9. He is paranoid and suffers from delusions. And his cognition is "pretty impaired." Tr. p. 11. He refused food during his hospitalization and spit medication at hospital staff. He also pretended to take his medication but hid it between his cheek and teeth and refused to swallow the pill.

J.K. lacks insight to his mental illness and refuses medication. He is not able to provide himself with food, clothing, shelter or other essential human needs. Dr. Hasan believes that because of his mental illness, J.K. lacks the ability to maintain employment and function independently. Tr. p. 10.

Dr. Hasan testified that J.K. presents a substantial risk that he will harm himself because he exhibits risky behaviors in places where he could get hurt. Tr. p. 12. J.K. also presents a substantial risk that he will harm others because he has a history of verbal and physical aggression, including "strangulation towards others." Tr. p. 13. J.K. testified that he is not dangerous but he does "get violent." Tr. p. 19.

After the hearing, the trial court granted the Hospital's petition for temporary commitment after concluding that the Hospital established by clear and

convincing evidence that J.K. suffers from Schizoaffective Disorder, and as a result, he is gravely disabled. J.K. now appeals.

## Discussion and Decision

[9] J.K. appeals the order temporarily committing him to the Hospital and argues that the trial court's finding that he is gravely disabled as a result of his mental illness is not supported by clear and convincing evidence.[1]

[10] Civil commitment proceedings have two purposes: to protect the public and to ensure the rights of the person whose liberty is at stake. *P.B. v. Evansville State Hosp.*, 90 N.E.3d 1199, 1202 (Ind. Ct. App. 2017). "[S]ince everyone exhibits some abnormal conduct at one time or another, loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior." *T.D. v. Eskenazi Health Midtown Cmty. Mental Health Ctr.*, 40 N.E.3d 507, 511 (Ind. Ct. App. 2015) (quoting *In re Commitment of G.M.*, 743 N.E.2d 1148, 1151 (Ind. Ct. App. 2001)). "Given the liberty interest at stake, the serious stigma involved, and the adverse social

---

[1] J.K.'s appeal is arguably moot because ninety days have elapsed since the trial court issued its order and J.K. has likely been released from his involuntary commitment. "When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed." *In re Commitment of J.M.,* 62 N.E.3d 1208, 1210 (Ind. Ct. App. 2016) (citing *In re J.B.,* 766 N.E.2d 795, 798 (Ind. Ct. App. 2002)). However, "Indiana recognizes a public interest exception to the mootness doctrine, which may be invoked when the issue involves a question of great public importance which is likely to recur." *T.W. v. St. Vincent Hosp. & Health Care Ctr., Inc.,* 121 N.E.3d 1039, 1042 (Ind. 2019) (citing *Matter of Tina T.,* 579 N.E.2d 48, 54 (Ind. 1991)). "[A]n involuntary commitment is of great public interest and involves issues which are likely to recur, so we generally choose to address the merits of such appeals, despite the mootness of the case." *B.D. v. Indiana Univ. Health Bloomington Hosp.,* 121 N.E.3d 1044, 1048 (Ind. Ct. App. 2019).

consequences that accompany such physical confinement, a proceeding for an involuntary civil commitment is subject to due process requirements." *B.D. v. Ind. Univ. Health Bloomington Hosp.*, 121 N.E.3d 1044, 1049 (Ind. Ct. App. 2019). To satisfy due process requirements, the petitioner is required to prove the facts justifying involuntary commitment by clear and convincing evidence. *Id.*

[11] "Clear and convincing evidence requires proof that the existence of a fact is highly probable." *Matter of Commitment of C.N.*, 116 N.E.3d 544, 547 (Ind. Ct. App. 2019) (quotation and citation omitted). Requiring this standard of proof reflects the "importance our legal system attaches to a decision ordering an involuntary commitment" and reduces the "chance of inappropriate involuntary commitments." *Civil Commitment of J.B. v. Cmty. Hosp. N.*, 88 N.E.3d 792, 795 (Ind. Ct. App. 2017). When we review the sufficiency of the evidence supporting an involuntary civil commitment, we will affirm if, "considering only the probative evidence and reasonable inferences supporting [the decision], without weighing evidence or assessing witness credibility, a reasonable trier of fact could find the necessary elements proven by clear and convincing evidence." *Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 273 (Ind. 2015).

[12] "There is no constitutional basis for confining a mentally ill person who is not dangerous and can live safely in freedom." *C.N.*, 116 N.E.3d at 547. But a court may order a temporary commitment of not more than ninety days for an

individual who is mentally ill and either dangerous or gravely disabled. Ind. Code § 12-26-6-1.

[13] J.K. does not challenge the trial court's finding that he suffers from mental illness. *See* Ind. Code § 12-7-2-130 (defining mental illness as a psychiatric disorder that substantially disturbs an individual's thinking, feeling, or behavior and impairs the individual's ability to function). Instead, J.K. contends that the Hospital failed to present sufficient evidence to support the trial court's finding that he is gravely disabled. "Gravely disabled" is defined as

> a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>
> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind. Code § 12-7-2-96.

[14] J.K. claims his refusal to take medication, "erratic behavior," and bizarre thoughts are not clear and convincing evidence of grave disability. *See* Appellant's Br. at 12–13. But this was not the only evidence presented to the trial court to establish that J.K. was gravely disabled.

[15] Dr. Hasan testified that J.K.'s cognition is "pretty impaired." Tr. p. 11. He stated that J.K. is not capable of coherent conversation and is confused. J.K.

has catatonic periods where he stares into space or responds to internal stimuli. J.K. is aggressive and admitted that he can be violent. He also exhibits paranoia.

[16] In addition to refusing medication, J.K. has refused food at the hospital. J.K. is homeless and has no means of caring for himself. His hygiene is lacking. Dr. Hasan believes that J.K. is not able to provide himself with food, clothing, shelter or other essential human needs. Dr. Hasan testified that because of his mental illness, J.K. lacks the ability to maintain employment and function independently. Tr. p. 10. J.K. lacks insight and understanding of his mental illness.

## Conclusion

[17] Under these facts and circumstances, we conclude that the trial court's order finding that J.K. is gravely disabled is supported by clear and convincing evidence.

[18] Affirmed.

Riley, J., and Tavitas, J., concur.