FILED

Mar 29 2023, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Jenny R. Buchheit
Sean T. Dewey
Alexandria H. Pittman
Ice Miller LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Civil
Commitment of: A.O.,

*Appellant-Respondent,*

v.

Community Health Network,
Inc.,

*Appellee-Petitioner*

March 29, 2023

Court of Appeals Case No.
22A-MH-2396

Appeal from the Marion Superior
Court

The Honorable Melanie L.
Kendrick, Magistrate

Trial Court Cause No.
49D08-2209-MH-33621

**Opinion by Judge Weissmann**
Judges Bailey and Brown concur.

**Weissmann, Judge.**

A.O., who has schizoaffective disorder, bipolar type, arrived at Community Hospital in a delusional and manic state. After an altercation with a hospital security officer, she chewed her IV line and began drinking the saline solution in it because she was thirsty. The trial court ordered A.O.'s temporary commitment, finding A.O. had a mental illness, was gravely disabled, and needed custody, care, and treatment for a period not expected to exceed 90 days.

A.O. appeals, acknowledging her mental illness but claiming that the court erred in finding she was gravely disabled. We conclude the evidence supports the court's judgment and thus affirm.[1]

## Facts

A.O. has had schizoaffective disorder, bipolar type, for four or five years. She also has a history of using illegal drugs, including methamphetamines. Now 25 years old, A.O. arrived at the Hospital's emergency room and, while waiting for

---

[1] A.O.'s temporary commitment was scheduled to expire December 29, 2022, effectively rendering this appeal moot. App. Vol. II, p. 10. As A.O. notes, "Indiana recognizes a public interest exception to the mootness doctrine, which may be invoked when the issue involves a question of great public importance which is likely to recur." *E.F. v. St. Vincent Hosp. & Health Care Ctr., Inc*., 188 N.E.3d 464, 466 (Ind. 2022) (quoting *Matter of Tina T*., 579 N.E.2d 48, 54 (Ind. 1991)). Because of the fundamental interests at stake in civil commitment cases, "review of the issues presented is important, including the nuances of the sufficiency of the evidence to support a commitment." *Id.* at 467. A.O. contends, and the Hospital does not dispute, that this mootness exception should apply here. We agree and apply the exception, as we have in other recent temporary commitment cases. *See*, *e.g.*, *In re Commitment of C.M.*, 191 N.E.3d 278, 280 (Ind. Ct. App. 2022).

treatment, became involved in the altercation with a hospital security officer over her request for water.

[4] Upon being seen by an emergency room doctor, A.O. was diagnosed with rhabdomyolysis. That condition involves a breakdown in muscles that ultimately can cause kidney damage. It often occurs in people with mental illnesses after periods of agitation, aggressive pacing, or nonstop walking. A.O. told Hospital staff that just before her hospitalization, she had been cleaning her grandfather's home for several hours and had not been sleeping or drinking enough water. A.O. also reported calling "ghost busters" to take her to the hospital. Tr. Vol. II, p. 6.

[5] The treatment A.O. received for rhabdomyolysis included an IV with saline solution. During this treatment, Hospital staff allegedly denied A.O.'s request for water, so A.O. chewed the IV line and drank the saline solution after threatening to do so. The psychiatrist who examined A.O. after this incident described it as "another episode of severe mania with psychosis." *Id.* at 13. The Hospital admitted her to its inpatient treatment and sought her temporary commitment. After a hearing at which A.O. testified that she would not take medication for her mental disorder, the trial court ordered A.O.'s temporary commitment. A.O. appeals that judgment.

## Discussion and Decision

[6] A.O. claims that the Hospital failed to prove that she was gravely disabled, a prerequisite to her temporary commitment. When reviewing the sufficiency of

the evidence supporting a civil commitment, we consider only the probative evidence and reasonable inferences supporting it, without weighing evidence or assessing witness credibility. *Civ. Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 273 (Ind. 2015). We will affirm if clear and convincing evidence supports the trial court's judgment. *Id.* Clear and convincing evidence requires proof that the existence of a fact is "highly probable." *Matter of Commitment of C.N.*, 116 N.E.3d 544, 547 (Ind. Ct. App. 2019).

[7]     A.O. does not dispute that she is a person with mental illness. Instead, she claims only that the temporary commitment is improper because the Hospital failed to prove she was "gravely disabled," as required by Indiana Code § 12-26-2-5(e). That statute allows an involuntary commitment of a patient with mental illness only when the petition proves by clear and convincing evidence that: 1) the patient is mentally ill and either dangerous or gravely disabled; and 2) detention or commitment of that individual is appropriate. I.C. § 12-26-2-5(e). The Hospital need only have proven that A.O. was either dangerous or gravely disabled; it was not required to prove both elements to carry its burden of proof. *In the Matter of the Commitment of M.Z. v. Clarian Health Partners*, 829 N.E.2d 634, 637 (Ind. Ct. App. 2005). The trial court found only that A.O. was gravely disabled and not that she was dangerous.

[8]     In this context, "gravely disabled" means "a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual: (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or (2) has a substantial impairment or an

obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently." Ind. Code § 12-7-2-96. A.O. claims the Hospital proved neither of these statutory prongs and thus did not establish she was gravely disabled. We disagree and find that clear and convincing evidence supports the trial court's determination that A.O. is "gravely disabled."

[9] A.O. contends the evidence shows she was handling her mental illness well so the Hospital did not prove the second prong of Indiana Code § 12-7-2-96(2)—that is, that she has a substantial impairment or an obvious deterioration of her judgment, reasoning, or behavior that results in her inability to function independently. She points to evidence that she was caring for her bedridden grandfather and toddler daughter in her grandfather's home at the time of her hospitalization.

[10] A.O. suggests the remaining evidence merely showed that she refused to recognize her mental illness or take the medication prescribed for her condition. As A.O. correctly notes, denial of mental illness and refusal to medicate, standing alone, are not enough to establish that she is gravely disabled. *See Civ. Commitment of T.K.*, 27 N.E.3d 271, 276 (Ind. 2015).

[11] But the record contains considerable, additional evidence showing A.O.'s inability to function independently due to a substantial impairment or an obvious deterioration of her judgment, reasoning, or behavior. A.O. was not sleeping or drinking enough water and was hospitalized for a serious illness—

rhabdomyolysis—that may have been linked to excess exertion caused by her untreated mental illness. Yet, A.O. did not recognize that she was ill or needed the IV treatment, according to Dr. Syed Hasan, the psychiatrist who examined A.O. at the Hospital. And rather than accepting the necessary treatment to prevent such complications as kidney damage, A.O. interfered with it by chewing through an IV tube and drinking the saline solution. Her altercation with the Hospital security officer beforehand prompted the Hospital to restrain her and left her bruised, according to A.O. Later during her hospitalization, she was agitated, not sleeping, and refusing to take any medication.

[12] A.O. stated she would only accept "natural" treatments for any illness, although she also denied being ill. Tr. Vol. II, p. 8. She believed she could "go out in [her] garden right now and . . . pick [a] weed that . . . can cure turberculosis (sic) and diarrhea[.]" *Id.* at 21. She contended that her prior "mental problems" were caused, rather than alleviated, by the anti-psychotic medicine she was prescribed in 2018. *Id.* A.O. also reported that her mental condition improved after she stopped taking that medication and that she would not take such prescription medications again.

[13] Dr. Hasan attributed A.O.'s inability to function independently to both a substantial impairment and obvious deterioration of her judgment, reasoning, or behavior. He testified that A.O. continues to believe she is God and "owns everything" and such "delusional, irrational, nonrealistic thoughts . . . impairs (sic) her ability to function." *Id.* at 8. According to Dr. Hasan, A.O. could not maintain employment, her ability to interact in a social setting was impaired by

her mental illness, and her prognosis was poor without treatment. *Id.* at 16-17. He concluded that A.O. had a "potential for . . . dangerousness there, and definitely she's gravely disabled." *Id.* at 9.

[14] When asked about her statements to Dr. Hasan that she owned the Hospital, A.O. responded, "Ok, um, well I remember being in a tomb. I remember the beginning of life. I remember my life being put on television." *Id.* at 23. She later testified that she split herself "into two people, an evil twin and a good twin." *Id.* at 24. She testified she then split herself "again into four" and "hid two of the twins so then one day when [she] was awake, and it was the right time [she] would be able to own everything and be able to have world peace." *Id.* Despite her health problems, A.O. testified she would only undergo treatment at a "natural" hospital. *Id.* at 21.

[15] This evidence shows A.O.'s lack of insight into her condition and that her delusional thoughts had compromised her treatment, judgment, and ability to function independently. During her psychotic episode at the Hospital, A.O. engaged in violent behavior and, by her account, had been injured. Given all this evidence, the Hospital proved by clear and convincing evidence that A.O. has "a condition in which [she], as a result of mental illness, is in danger of coming to harm because [she]. . . has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently." Ind. Code § 12-7-2-96(2); *see A.S. v. Ind. Univ. Health Bloomington Hosp.,* 148 N.E.3d 1135 (Ind. Ct. App. 2020) (affirming a finding of grave disability where delusional patient

suggested she was Jesus, refused medication, acted inappropriately at the hospital, and was threatening toward hospital staff).[2]

[16] As A.O. challenges only the trial court's determination that she was "gravely disabled" and clear and convincing evidence supports that determination, we affirm the trial court's judgment.

Bailey, J., and Brown, J., concur.

---

[2] A.O. also contends that she is not "gravely disabled" as defined by Indiana Code § 12-7-2-96(1) because the Hospital did not prove by clear and convincing evidence that she cannot provide her food, clothing, shelter, or other essential human needs. But Indiana Code § 12-7-2-96 is written in the disjunctive. Given that the Hospital proved A.O. was "gravely disabled" under Indiana Code § 12-7-2-96(2), we need not address whether she was "gravely disabled" under Indiana Code 12-7-2-96(1).